# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| ENGLISH MOUNTAIN SPRING WATER COMPANY, INC., ) ) ) | |
| Plaintiff/Counter-Defendant, ) ) | |
| v. ) ) | No. 3:07-cv-324 (Phillips/Shirley) |
| AIDCO INTERNATIONAL, INC., ) ) | |
| Defendant/Counter-Plaintiff. ) | |

## MEMORANDUM AND ORDER

This matter is before the court on plaintiff/counter-defendant English Mountain Spring Water Company, Inc.'s motion to dismiss defendant's counterclaim [Doc. 13]. For the reasons that follow, plaintiff/counter-defendant's motion is **DENIED**.

## I. BACKGROUND

This action involves a dispute over the alleged failure of a piece of automated water bottling equipment. Plaintiff/counter-defendant English Mountain Spring Water Company, Inc. ("English Mountain") operates a water bottling facility in Dandridge, Tennessee. English Mountain alleges that it executed a sales contract with defendant/counter-plaintiff AIDCO International, Inc. ("AIDCO") to purchase the RoboticStar Six Axes KR 360 (the "RoboticStar"). The day after installation, English Mountain alleges, the RoboticStar failed to perform. Despite AIDCO's repair attempts, the RoboticStar never operated to English Mountain's satisfaction; English Mountain alleges this failure has caused it to lose customers and profits, as well as to incur great expense, both

in repairing the equipment and in hiring additional laborers to replace the automated system.

AIDCO, to the contrary, alleges that its President and CEO knew the founder of English Mountain and pursuant to this relationship, AIDCO and English Mountain agreed to a "joint venture" or "quasi-partnership" arrangement. Under this agreement, AIDCO would supply English Mountain with equipment, labor, and materials either free of charge or at reduced rates. AIDCO alleges that in return the parties agreed to jointly develop and test certain new innovations of AIDCO, and AIDCO would also provide English Mountain with labor, training, and supervision. For example, as AIDCO alleges, it loaned funds to English Mountain for the down payment on a lease for the RoboticStar, pursuant to this "quasi-partnership" agreement. According to AIDCO, English Mountain failed to uphold the agreement by damaging the AIDCO equipment and machinery through "misuse and outright abuse" and by further breaching and repudiating the parties' agreements.

Plaintiff initially brought this suit in the Circuit Court for Jefferson County, Tennessee, alleging breach of contract and warranty and violations of the Tennessee Consumer Protection Act. Defendant AIDCO subsequently removed to this court on the basis of diversity jurisdiction. This court having denied AIDCO's motion to dismiss or, alternatively, for transfer of venue [Doc. 9], AIDCO filed its answer, in which it also alleged counterclaims against English Mountain on five counts.

## II. STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted," Fed. R. Civ. Pro. 12(b)(6), a court must "construe the complaint in the

light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DIRECTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). Counter-defendant's motion may only be granted if, after assuming all allegations are true, counter-plaintiff fails "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).

## III.  ANALYSIS

### A.  Governing Law

Although not specifically raised by English Mountain in its motion to dismiss, governing law is at issue in this case. AIDCO specifically noted this dispute in its response, [Doc. 15 at 6-7], citing the contract underlying this dispute and a choice-of-law provision therein denoting Michigan as the governing law. Although AIDCO primarily uses Michigan law in its response brief, AIDCO submits that as it has stated a claim under either Tennessee or Michigan law, the dispute is irrelevant to the instant motion. English Mountain failed to respond to this matter in its reply brief; however, it consistently argues the legal issues under Tennessee law.

After a request from the court, the parties submitted additional briefs regarding governing law [Docs. 18 and 19]. Plaintiff/counter-defendant English Mountain argues that Tennessee law should apply, despite the choice-of-law provision in the underlying contract, as the counterclaims alleged by defendant/counter-plaintiff AIDCO arise separately therefrom. English Mountain further argues, however, that regardless of whether Tennessee or Michigan law applies, the same result follows: AIDCO's counterclaims must fail. AIDCO in turn argues that Michigan law governs, not

only under the choice-of-law provision in the contract but also under the respective conflicts-of-law rules used in Tennessee and Michigan.

        *1.*     *Validity of Choice-of-Law Clause*

As a preliminary matter, the court must determine whether the choice-of-law clause is valid.[1] Because this court is sitting in diversity, the validity of the choice-of-law clause is governed by Tennessee choice-of-law rules. *See Day & Zimmerman, Inc. v. Challoner*, 423 U.S. 3, 4 (1975) (per curiam); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). In Tennessee, "parties ordinarily are free to contract that the law of some jurisdiction other than that of the place of making will govern their relationship." *Goodwin Bros. Leasing, Inc. v. H&B, Inc.*, 597 S.W.2d 303, 306 (Tenn. 1980). If the parties so contract, "that intent will be honored provided certain requirements are met." *Messer Griesheim Indus. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 475 (Tenn. Ct. App. 2003). For the intent to be honored, the choice-of-law provision must be executed in good faith, the chosen jurisdiction must bear a material relationship to the transaction, the basis of the choice must be reasonable, and finally, the parties' choice must not subvert the policy of a state having a materially greater interest and whose law would otherwise govern. *Id.*

The court finds that all four requirements have been met. First, there is no indication that the contract was entered into in bad faith. The provision is clear and explicit that Michigan law governs, and neither party has pointed to any evidence that it was forced into a contract of adhesion. Second, Michigan bears a material relationship to the transaction and the basis of the choice was reasonable, as AIDCO is incorporated under the laws of Michigan and its principal place of

---

[1] In a previous order [Doc. 12], the court presumed the validity of the choice-of-law clause for the purpose of ruling on defendant's motion to dismiss or, alternatively, for transfer of venue and brief in support. The court will now undertake the necessary analysis to determine whether the clause is valid.

business is located therein. Finally, the interests of Tennessee or any other state are not materially greater, nor does it appear that any interests would be subverted by the application of Michigan law.

Because the clause is valid, the court must determine whether it applies to AIDCO's counterclaims or whether those counterclaims are beyond its scope.

### 2. *Applicability of Choice-of-Law Clause to Counterclaims*

Similarly, under *Klaxon* and its progeny the court must apply Tennessee conflicts-of-law rules to determine whether the choice-of-law provision extends to the counterclaims alleged by AIDCO. AIDCO alleges five counterclaims of breach of contract, unjust enrichment/quantum meruit, rescission, conversion, and declaratory judgment.

Tennessee law is not entirely clear as to whether a choice-of-law provision in a contract extends to counterclaims, particularly counterclaims sounding in tort and other non-contractual causes of action. It appears, however, that Tennessee will apply a choice-of-law provision to the entirety of the dispute between two parties, especially when the clause purports to govern disputes between the parties, as opposed to a more narrow sort of clause dictating the law governing only the construction of the contract itself. *See Frizzell Constr. Co. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79 (Tenn. 1999) (choice-of-law clause governing entire agreement also applied to arbitration clause); *see also Moses v. Bus. Card Exp., Inc.*, 929 F.2d 1131, 1139-40 (6th Cir. 1991) (discussing Fifth Circuit case comparing narrow clause that "agreement shall be construed" under California law with broader clause of "govern, construe and enforce all of the rights and duties of the parties" relating in any way to the contract).

Accordingly, because the choice-of-law provision at issue provides, "Resolution of disputes

shall be conducted in accordance with the laws of the State of Michigan," [Doc. 9-2], the court finds that Michigan law governs the entirety of the dispute, including the counterclaims alleged by AIDCO.

**B.     Counterclaims**

The court will first articulate the elements of each of AIDCO's counterclaims. First, under Michigan law, a party alleging a breach of contract must establish that "a contract existed between the parties and that a breach of one or more of the contractual terms occurred." *Lindsay & Lindsay, LLP v. Rausch*, No. 268703, 2007 WL 4270771, at *3 (Mich. Ct. App. Dec. 6, 2007). The elements of a valid contract are "(1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Id.* (quoting *Hess v. Cannon Twp.*, 696 N.W.2d 742, 748 (Mich. Ct. App. 2005) (citation omitted)).

To plead an unjust enrichment claim, a plaintiff must establish "(1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by defendant." *Barber v. SMH (US), Inc.*, 509 N.W.2d 791, 797 (Mich. Ct. App. 1993).

In Count III of its counterclaim, AIDCO "requests equitable rescission of the parties' 'joint venture' or 'quasi-partnership' type arrangement." [Doc. 11 at 25]. Likewise, Count V seeks a declaratory judgment establishing that AIDCO and English Mountain had a joint venture. [Doc. 11 at 26].

> A rescission is an avoidance of a transaction ... [that] allow[s] both parties to be in the same position as they would have been if they had never entered into the contract. "[T]o warrant rescission, there must be a material breach affecting a substantial or essential part of the contract." In determining whether a breach is material, among other factors, [the court] examine[s] whether the non-breaching party obtained the benefit, which he or she reasonably expected to receive.

*Burke v. Brooks*, No. 274346, 2008 WL 1808140, at *2 (Mich. Ct. App. Apr. 22, 2008) (quoting *Holtzlander v. Brownell*, 452 N.W.2d 295, 298 (Mich. Ct. App. 1990))..

With regard to whether a joint venture existed,

> "[a] joint venture is an association to carry out a single business enterprise for profit." The elements of a joint venture are: (1) an agreement indicating an intention to undertake a joint venture; (2) a joint undertaking; (3) a single project for profit; (4) a sharing of profits and losses; (5) contribution of skills or property by the parties; and (6) community interest and control over the enterprise. "The key consideration is that the parties intended a joint venture."

*Sanitary Disposal Servs., Inc. v. W. Mich. Waste Reduction, LLC*, No. 276580, 2008 WL 684796, at *2 (Mich. Ct. App. Mar. 13, 2008) (quoting *Berger v. Mead*, 338 N.W.2d 919, 922 (Mich. Ct. App. 1983)).

"Conversion is defined as 'any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein.'" *Lawsuit Fin., Inc. v. Curry*, 683 N.W.2d 233, 240 (Mich Ct. App. 2004) (quoting *Foremost Ins. Co. v. Allstate Ins. Co.*, 486 N.W.2d 600, 606 (1992)). "Conversion is an intentional tort in that the defendant's action must be willful, but one can commit the tort unwillingly if unaware of the plaintiff's outstanding property interest." *Citizens Ins. Co. of Am. v. Delcamp Truck Ctr., Inc.*, 444 N.W.2d 210, 213 (Mich Ct. App. 1989).

At this early stage in the proceedings, the court simply has insufficient information to determine whether these alleged violations have occurred. Certainly if the facts pleaded by AIDCO are taken as true, then the counterclaims survive the hurdle of a Rule 12(b)(6) motion to dismiss. While English Mountain vehemently argues that these counterclaims must be dismissed on the primary basis that a quasi-partnership did not exist, its basis for so arguing rests mainly on its insistence that the parties were not to share in profits and losses. At this preliminary stage, however,

at which little if any discovery has been conducted, this is by no means readily apparent, and AIDCO has raised its right to relief above the speculative level.

Accordingly, plaintiff/counter-defendant's motion to dismiss defendant's counterclaim [Doc. 13] will be **DENIED**, subject to renewal upon a properly substantiated motion for summary judgment.

**IT IS SO ORDERED**.

**ENTER:**

s/ Thomas W. Phillips
United States District Judge